## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **COLIN RICE, Individually and For Others Similarly Situated,** | Case No. _____ |
| **Plaintiff,** | **JURY TRIAL DEMANDED** |
| **v.** | **COLLECTIVE ACTION PURSUANT** |
| **WALBRIDGE ALDINGER LLC.** **Defendant.** | **TO 29 U.S.C. § 216(b)** |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Plaintiff Colin Rice (Plaintiff) brings this lawsuit individually and on behalf of all current and former hourly workers (Putative Class Members) who worked for Walbridge Aldinger LLC. (WALLC) and were paid straight time for overtime – that is, paid the same hourly rate for all hours worked each week, including those over 40. Plaintiff brings this action to recover unpaid overtime wages and other damages from WALLC under the Fair Labor Standards Act (FLSA).

2.      This lawsuit includes a collective action pursuant to the FLSA, 29 U.S.C. §§ 201 *et. seq.*, to recover overtime wages.

3.      Plaintiff and the Putative Class Members worked for WALLC and helped WALLC further its business interests in construction and other industries.

4.      Plaintiff and the Putative Class Members regularly worked for WALLC in excess of forty (40) hours each week.

5.      But WALLC did not pay them overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

6.      Instead of paying overtime as required by the FLSA, WALLC improperly classified Plaintiff and the Putative Class Members as independent contractors ineligible for overtime, and paid them the same hourly rate for all hours worked, including those in excess of 40 in a workweek (paid "straight time for overtime"). This practice violates the overtime requirements of the FLSA. *See* 29 U.S.C. § 201 *et. seq.*

7.      WALLC's decision not to pay overtime compensation to Plaintiff and the Putative Class Members at a rate of one and one-half times their regular rate was neither reasonable nor in good faith.

8.      Rather, WALLC knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

9.      Plaintiff and the Putative Class Members therefore seek to recover all unpaid overtime and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

### JURISDICTION AND VENUE

10.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §

1331 and 29 U.S.C. § 216(b) because this action involves a federal question under the FLSA.

11.    This Court has personal jurisdiction over WALLC because WALLC is a resident entity of this District, conducts business in this District and is subject to the court's personal jurisdiction with respect to the civil action in question.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because WALLC is headquartered in this district and because a substantial part of the policies or omissions giving rise to the claim arose within this District.

## THE PARTIES

13.    Plaintiff worked for WALLC from approximately March 2021 until November 2021 as an Inspector in Spring Hill, Tennessee.

14.    Throughout his employment, WALLC paid Plaintiff the same hourly rate for all hours worked, including those in excess of 40 in a workweek, per its straight time for overtime pay plan.

15.    The relationship between Plaintiff and WALLC rises to the level of an employee-employer relationship.

16.    Plaintiff's consent to be a party plaintiff is attached as **Exhibit A**.

17.    Plaintiff brings this action on behalf of himself and all similarly situated workers who were paid by WALLC's straight time for overtime pay plan.  WALLC classified these workers as independent contractors, paid them straight time for overtime for hours worked in excess of 40 in a workweek, and failed to pay them

3

overtime at a rate of one and one-half times their regular rate of pay, in violation of the FLSA.

18.     The FLSA Collective of similarly situated workers consists of:

**All individuals employed by or working on behalf of WALLC and paid according to its straight time for overtime pay plan in the past three (3) years (Putative Class Members).**

19.     The identities of the Putative Class Members can be readily ascertained from WALLC's records.

20.     WALLC is a company doing business throughout the United States.

21.     WALLC is a Michigan corporation, headquartered in Detroit, Michigan and may be served through its registered agent for service of process: **Thomas Dyze,** 777 Woodward Avenue, Suite 300, Detroit, MI 48226.

### ADDITIONAL FACTS

22.     WALLC is one of the leading industrial contractors in the United States. WALLC is engaged in providing construction services and support across a variety of industries,        including        in        manufacturing.        *See*        *generally* https://www.walbridge.com/market/manufacturing/ (Last visited July 7, 2022).

23.     WALLC itself has numerous locations throughout the United States, and operates in conjunction with its clients on sites throughout the United States. *See generally* https://www.walbridge.com/contact/locations/ (last visited July 7, 2022).

24.     WALLC has a practice of using staffing companies to source its workers such as Plaintiff.

25.     To complete its business objectives, WALLC hires personnel (like Plaintiff) to staff its various worksites and secure its production and business interests in said locations.

26.     For example, Plaintiff was hired by WALLC to provide inspection services at the site of a manufacturing plant in Spring Hill, Tennessee.

27.     Plaintiff would service perform inspections as directed at his designated worksite and ensure WALLC construction safety protocols were followed and that all progress was achieved according to established standards and procedures.

28.     Throughout Plaintiff's employment with WALLC, WALLC improperly classified him as an independent contractor ineligible for overtime compensation.

29.     Throughout Plaintiff's employment with WALLC, WALLC paid him on a straight time for overtime basis, wherein Plaintiff received the same hourly rate for all hours worked, regardless of how many hours he worked in a day or week.

30.     WALLC paid the staffing company through which WALLC hired Plaintiff. Per WALLC's directives, the staffing company invoiced WALLC the same hourly rate for all hours Plaintiff worked each week, including those over 40. Per WALLC's directives, the staffing company paid Plaintiff the same hourly rate for all hours worked each week, including those over 40.

31.     During his time with WALLC, Plaintiff regularly worked 60 hours or more each week.

32.    At no time during Plaintiff's employment with WALLC did WALLC pay him the overtime compensation to which he was legally entitled, at a rate of one and one-half times his regular rate of pay ("full overtime") for the hours worked in excess of forty (40) in a single week.

33.    Plaintiff is one of many hourly workers that WALLC employed.

34.    Numerous workers similarly-situated to Plaintiff whom WALLC hired were classified by WALLC as independent contractors and deemed ineligible for overtime compensation by WALLC.

35.    Many of these employees worked for WALLC on a straight time for overtime basis (without full overtime pay).

36.    Said employees were subjected to the same or similar illegal pay practices for similar work.

37.    These workers make up the proposed collective of Putative Class Members.

38.    During the relevant period, these Putative Class Members were classified by WALLC as independent contractors.

39.    During the relevant period, these Putative Class Members worked for WALLC pursuant to a straight time for overtime hourly pay plan, wherein they were paid the same hourly rate for all hours worked in each workweek.

40.    To the extent WALLC hired these workers via staffing companies, per WALLC's directives, the staffing companies would invoice WALLC the same hourly

rate for all hours the Putative Class Members worked each week, including those over 40. Per WALLC's directives, the staffing companies then paid these workers same hourly rate for all hours worked each week, including those over 40.

41.     During the relevant period, these Putative Class Members were not paid full overtime compensation for the hours they worked for WALLC in excess of 40 hours each week.

42.     While exact job titles and job duties may differ, WALLC subjected the Putative Class Members and other safety and inspection personnel to the same or similar illegal pay practices for similar work.

43.     Plaintiff and the Putative Class Members worked in the field with other safety, manufacturing, and construction personnel.

44.     The Putative Class Members performed the same general job duties performed by Plaintiff. These were duties and work performed to secure WALLC's interests in the furtherance of construction project management.

45.     The Putative Class Members worked the same or similar schedule worked by Plaintiff, regularly working more than 40 hours each week.

46.     Frequently Plaintiff and the Putative Class Members worked for WALLC well over 60 hours in a given week.

47.     WALLC was in control of the work schedules of Plaintiff and the Putative Class Members.

48.     Plaintiff's work schedule is typical of the Putative Class Members.

49. Plaintiff and the Putative Class Members work(ed) for WALLC under its straight time for overtime pay scheme.

50. At no point in time did Plaintiff or the Putative Class Members receive a salary for the work they performed for WALLC.

51. Plaintiff and the Putative Class Members were paid the same hourly rate regardless of the number of hours or days they worked in a week, including when they worked more than 40 hours in a workweek.

52. WALLC, for its purposes, classified Plaintiff and the Putative Class Members as independent contractors ineligible for overtime.

53. But WALLC hired, treated, and controlled Plaintiff and the Putative Class Members just like regular, even if sometimes short-term, employees.

54. In fact, Plaintiff and the Putative Class Members were employees of WALLC.

55. Throughout Plaintiff's employment with WALLC, he had to secure approval from WALLC representatives for his timesheets or to otherwise submit his time.

56. Throughout Plaintiff's employment with WALLC, any questions he had regarding his pay were directed to WALLC and WALLC was the only entity authorized to respond.

57.     When Plaintiff inquired as to why he was being paid straight time for overtime, instead of one and one-half times his regular rate for all hours worked over 40, he learned that said pay scheme was put in place by WALLC.

58.     The work assigned to and performed by Plaintiff and the Putative Class Members was assigned and governed entirely by WALLC.

59.     Plaintiff and the Putative Class Members reported directly to WALLC management-level employees.

60.     Plaintiff and the Putative Class Members had to participate in daily meetings scheduled by WALLC and with WALLC personnel.

61.     Plaintiff and the Putative Class Members had to adhere to the quality standards and other requirements put in place by WALLC.

62.     Plaintiff and the Putative Class Members were required to follow and implement WALLC's inspection policies and procedures.

63.     Plaintiff and the Putative Class Members had to work at the location(s) designated by WALLC.

64.     WALLC personnel directed Plaintiff and the Putative Class members as to the tasks or objectives to be completed in a given day, week, or other timeline.

65.     Plaintiff and the Putative Class Members worked in accordance with schedules determined by WALLC.

66.     Plaintiff and the Putative Class Members were economically dependent on WALLC and relied on WALLC for work and compensation.

67.     WALLC determined the amount and type of compensation paid to Plaintiff and the Putative Class Members.

68.     WALLC controlled Plaintiff's and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they worked and the rates and method in which they were paid.

69.     WALLC effectively prevented Plaintiff and the Putative Class Members (or outright prohibited them) from working other jobs for other companies while they were working on jobs for WALLC.

70.     WALLC prohibited Plaintiff and the Putative Class Members from subcontracting out the work they were assigned by WALLC.

71.     While employed by WALLC, Plaintiff and the Putative Class Members did not market their services elsewhere.

72.     While employed by WALLC, Plaintiff and the Putative Class Members worked exclusively for WALLC.

73.     Plaintiff and the Putative Class Members did not provide the primary equipment and programs they worked with daily, such as inspection protocols, office space, computers, and other necessary equipment.

74.     Plaintiff and the Putative Class Members did not incur operating expenses such as rent, payroll, and marketing.

75.     Plaintiff and the Putative Class Members did not substantially invest in the equipment or tools required to complete the overall job to which WALLC assigned them.

76.     Rather, WALLC made the large capital investments in buildings, machines, equipment, tools, and supplied the workspace in which Plaintiff and the Putative Class Members worked, and WALLC provided Plaintiff and the Putative Class Members with the programs, equipment, and facilities necessary for them to perform their inspection work for WALLC.

77.     The work Plaintiff and the Putative Class Members performed was an essential part of WALLC's core businesses.

78.     Without the job performed by Plaintiff and the Putative Class Members, WALLC would not have been able to secure or complete its business objectives.

79.     At all relevant times, WALLC maintained control, oversight, and direction of Plaintiff and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

80.     WALLC controlled Plaintiff's and the Putative Class Members' pay.

81.     Likewise, WALLC controlled Plaintiff's and the Putative Class Members' work.

82.     Even though Plaintiff and the Putative Class Members may have worked away from WALLC's offices without the constant presence of WALLC's supervisors,

WALLC still controlled significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

83. The daily and weekly activities of Plaintiff and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by WALLC.

84. Virtually every job function was predetermined by WALLC, including the tools and equipment used, the location of work, the schedule of work, and related work duties, and the standards with which said duties had to conform.

85. Overall, WALLC prohibited Plaintiff and the Putative Class Members from varying their job duties outside of predetermined parameters.

86. Plaintiff and the Putative Class Members were not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

87. Plaintiff and the Putative Class Members performed routine job duties largely dictated by WALLC.

88. All of the Putative Class Members performed similar job duties and were subjected to the same or similar policies and procedures which dictated the day-to-day activities they performed.

89. All of the Putative Class Members worked similar hours and were denied full overtime compensation as a result of the same illegal straight time for overtime pay practice.

90.     All of the Putative Class Members worked in excess of 40 hours each week and often worked more than 60 hours in a workweek.

91.     WALLC uniformly denied Plaintiff and the Putative Class Members full overtime for the hours they worked in excess of 40 hours in a single workweek.

92.     Plaintiff and the Putative Class Members were not employed on a salary basis.

93.     The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay.

94.     WALLC violated the FLSA because WALLC, via its broadly applied and illegal straight time for overtime pay plan, denied Plaintiff and the Putative Class Members the full overtime pay for the hours they worked in excess of 40 in a single workweek, to which Plaintiff and the Putative Class Members are legally entitled.

95.     WALLC knew Plaintiff and the Putative Class Members worked more than 40 hours in a week.

96.     WALLC knew, or showed reckless disregard for whether, Plaintiff and the Putative Class Members were improperly classified as independent contractors (as opposed to employees).

97.     WALLC knew, or showed reckless disregard for whether, Plaintiff and the Putative Class Members were or were not exempt from the FLSA's overtime provisions.

98.    WALLC knew, or showed reckless disregard for, whether the Putative Class Members were entitled to overtime under the FLSA.

99.    WALLC utilized a straight time for overtime pay plan despite clear and controlling law that states that Plaintiff and the Putative Class Members were WALLC's **_non-exempt_** employees, and not independent contractors.

100.    Accordingly, WALLC's pay policies and practices blatantly violated (and continue to violate) the FLSA.

### COVERAGE UNDER THE FLSA

101.    All previous paragraphs are incorporated as though fully set forth herein.

102.    The FLSA Collective of similarly situated workers consists of:

> **All individuals employed by or working on behalf of WALLC and paid according to its straight time for overtime pay plan in the past three (3) years (Putative Class Members).**

103.    At all times hereinafter mentioned, WALLC was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

104.    At all times hereinafter mentioned, WALLC was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

105.    At all relevant times, WALLC has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

106.    At all relevant times, WALLC has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling,

14

or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof.

107.   In each of the past 3 years, WALLC's annual gross volume of sales has exceeded $1,000,000 for at least the past 3 years.

108.   During the respective periods of Plaintiff and the Putative Class Members' employment by WALLC, the Putative Class Members provided services for WALLC that involved interstate commerce for purposes of the FLSA.

109.   WALLC uniformly applied its policy of improperly classifying the Putative Class Members, including Plaintiff, as independent contractors.

110.   WALLC uniformly applied its policy of paying its Putative Class Members, including Plaintiff, straight time for overtime without full overtime compensation.

111.   WALLC applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

112.   WALLC's practice of misclassifying its employees as independent contractors violates the FLSA.

113.   WALLC's uniform compensation scheme paying straight time for overtime with no overtime compensation for weeks in which these workers work over 40 hours is, in itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

114.   By improperly classifying the Putative Class Members as independent contractors instead of employees, and by paying said Class Members straight time for overtime, WALLC violated (and continues to violate) the FLSA's requirement that it pay its employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

115.   As a result of this policy, WALLC and the Putative Class Members did not and do not receive full overtime payment as required by the FLSA.

116.   The proposed collective of similarly situated employees, i.e. putative collective members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 99.

117.   The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of WALLC.

**CAUSE OF ACTION**
**FLSA VIOLATIONS**

118.   All previous paragraphs are incorporated as though fully set forth herein.

119.   At all relevant times, Plaintiff and the Putative Class Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

120.   WALLC violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce

16

or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates.

121.   In violating the FLSA, WALLC knowingly, willfully and with reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees full overtime compensation. 29 U.S.C. § 255(a).

122.   WALLC knew or should have known its pay practices were in violation of the FLSA.

123.   Because WALLC knew, or showed reckless disregard for whether, its pay practices violated the FLSA, WALLC owes these wages for at least the past three years.

124.   The decision and practice by WALLC to not pay full overtime was neither reasonable nor in good faith.

125.   Accordingly, Plaintiff and the Putative Class Members are entitled to full overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees, and costs.

## FLSA COLLECTIVE ACTION ALLEGATIONS

126.   All previous paragraphs are incorporated as though fully set forth herein.

127.   Pursuant to 29 U.S.C. § 216(b), this collective claim is made on behalf of all those who are (or were) similarly situated to Plaintiff.

128.    Other similarly situated employees (the Putative Class Members, as defined herein) have been victimized by WALLC's straight time for overtime pay scheme, which is in willful violation of the FLSA.

129.    WALLC's failure to pay full overtime compensation results from generally applicable policies and practices and does not depend on the personal circumstances of the individual Putative Class Members.

130.    Thus, Plaintiff's experiences are typical of the experiences of the Putative Class Members.

131.    The specific job titles or precise job requirements of the various Putative Class Members do not prevent collective treatment.

132.    All of the Putative Class Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

133.    Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

134.    Indeed, the Putative Class Members are non-exempt employees entitled to full overtime after forty (40) hours in a week.

135.    WALLC has employed a substantial number of similarly situated workers within the three-year period preceding the filing of the instant lawsuit.

136.    Upon information and belief, these Putative Class Members are geographically dispersed, residing and working in locations across the United States.

137.    Because the Putative Class Members do not necessarily have fixed work locations, they may work in different states across the country in the course of a given year.

138.    Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and WALLC will retain the proceeds of its rampant violations.

139.    Moreover, individual litigation would be unduly burdensome to the judicial system.

140.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

141.    Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined herein and notice should be promptly sent.

### JURY DEMAND

142.    Plaintiff demands a trial by jury.

### RELIEF SOUGHT

143.    WHEREFORE, Plaintiff prays for judgment against WALLC as follows:

a.      For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Putative Class as defined in herein and requiring WALLC to provide the names,

addresses, e-mail addresses, telephone numbers, and social security numbers of all potential collective action members;

b.      For an Order approving the form and content of a notice to be sent to all potential FLSA Putative Class Members advising them of the pendency of this litigation and of their rights with respect thereto;

c.      For an Order awarding Plaintiff (and those FLSA Putative Class Members who have joined in the suit) back wages that have been improperly withheld;

d.      For an Order pursuant to Section 16(b) of the FLSA finding WALLC liable for unpaid back wages due to Plaintiff (and those FLSA Putative Class Members who have joined in the suit), for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Putative Class Members who have joined in the suit);

e.      For an Order awarding the costs and expenses of this action;

f.      For an Order awarding attorneys' fees;

g.      For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

h.      For an Order awarding the Plaintiff a service award as permitted by law;

i.      For an Order compelling the accounting of the books and records of WALLC, at WALLC's own expense;

j.      For an Order providing for injunctive relief prohibiting WALLC from engaging in future violations of the FLSA, and requiring WALLC to comply with such laws going forward; and

k.      For an Order granting such other and further relief as may be necessary and appropriate.

Date: August 3, 2022                    Respectfully submitted,

By: */s/ Jennifer L. McManus*
**Jennifer L. McManus (P65976)**
**FAGAN MCMANUS, PC**
25892 Woodward Avenue
Royal Oak, MI 58067-0910
248-542-6300 – Telephone
jmcmanus@faganlawpc.com

AND

**Michael A. Josephson**
Texas Bar No. 24014780
Fed Id. 27157
**Andrew W. Dunlap**
Texas Bar No. 24078444
Fed Id. 1093163
**Alyssa White**
Texas Bar No. 24073014
Fed Id. 1503719
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
awhite@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
Fed Id. 21615
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**